### WEEDIN, Immigration Com'r, v. LEE GOCK DOO.*
#### No. 5926.

Circuit Court of Appeals, Ninth Circuit.
May 19, 1930.

Anthony Savage, U. S. Atty., and Hamlet P. Dodd, Asst. U. S. Atty., both of Seattle, Wash. (John F. Dunton, U. S. Immigration Service, of Seattle, Wash., on the brief), for appellant.

*Rehearing denied August 26, 1930.

130

John J. Sullivan and Michael·F. Ward, both of Seattle, Wash., for appellee.

Before DIETRICH and WILBUR, Circuit Judges, and KERRIGAN, District Judge.

## KERRIGAN, District Judge.

Appellee, Lee Gock Doo, was discharged following the granting of a writ of habeas corpus. The Commissioner of Immigration appeals.

Lee Gock Doo applied for admission to the United States as a citizen by virtue of being a foreign-born son of Lee Yuen, a native-born citizen of this country. The citizenship of the father was conceded. The Board of Special .Inquiry denied admission upon the ground that relationship had not been satisfactorily established, and an appeal was dismissed by the Secretary of Labor. A writ of habeas corpus was thereafter applied for, which, after hearing upon order to show cause, was ordered issued; appellee being thereafter discharged, upon the ground that the conclusions of the Board of Special Inquiry were arbitrary and capricious.

Examination of the original immigration record transmitted to this court as an exhibit shows that testimony was given by the applicant, Lee Gock Doo, his alleged father, Lee Yuen, and one Wong Ben Yook, no relation to applicant. As a whole, the testimony of these witnesses at this hearing was in substantial agreement. It appears, however, that in 1926, on his return from a trip to China, Lee Yuen, the alleged father, brought with him and sought the admission of this applicant, Lee Gock Doo, then twelve years old, and another alleged son, Lee Gock Din or Gin. At that time both of these alleged sons were denied admission on the ground that the relationship had not been established. The 1926 record shows discrepancies between the testimony of the alleged father and the applicant in at least two matters as to which it seems that members of the same family should have been in accord. The first of these consists in the testimony of the applicant (supported by the alleged brother) that the father had been away from home at Hong Kong for a considerable period, a month or two, during his visit to the home village, and that this was his only absence, the father stating that he was not away except for three or four times when he spent one or two days at the market. The second material discrepancy was as to whether Lee Gock Doo slept at home or at the school during the three years of the father's stay, the applicants both stating that he slept at the school, the father stating that he slept at home.

Turning to the record of the present hearing, and comparing it with the earlier record, it appears that the alleged father and the applicant now agree upon certain testimony which conflicts with statements made by both in 1926. In 1926, applicant testified that he attended school in his home village, Ping On, for two years, with his alleged brother, Lee Gock Din, before going to Foo San village to school. At the last hearing both applicant and his father testified that applicant had never attended any other school than the one in Foo San village. In 1926 applicant and his father both located a certain new house in the home village of sixteen buildings as being the third house in the sixth row; now both agree that it is the third house in the third row.

The additional witness at the last hearing, Wong Ben Yook, was not considered satisfactory by the Board of Special Inquiry. Wong Ben Yook claimed to have seen applicant on three occasions, the first in 1923. He was able, on the basis of this acquaintance, to give the names of all of applicant's six brothers and of his mother. His own residence was in a neighboring village not more than two ordinary city blocks distant from that which applicant claimed as his home. Despite this fact, applicant was unable to give any information whatever as to the family of the witness, or as to the neighboring village, stating that he had never visited that village.

The record also contains the significant remark from Lee Yuen, the alleged father, when asked why he only sent for one of the boys formerly deported, that he did so, "For one reason I did not have enough money for passage for both of them and if they both should have come together the testimony would be all mixed up."

■■ On this record, despite the substantial agreement in the testimony at the last hearing taken alone, it cannot be said that the conclusion reached by the Board of Special Inquiry was without foundation, and hence arbitrary and capricious. Moy Chee Chong v. Weedin (C. C. A.) 28 F.(2d) 263. The unexplained discrepancies in the 1926 record, and between that record and the one at the last hearing, are as to matters in which a reasonable degree of agreement would be expected were the persons involved members of the same family. Chin Share Nging v. Nagle (C. C. A.) 27 F.(2d) 848. Agreement among the witnesses subsequently arrived at may itself

be considered to be a circumstance casting doubt upon the veracity of the witnesses. Nagle v. Dong Ming (C. C. A.) 26 F.(2d) 438; Moy Chee Chong v. Weedin, supra.

Judgment reversed, with directions to dismiss the writ of habeas corpus and remand Lee Gock Doo to the custody of appellant.

DIETRICH, Circuit Judge (concurring).

Upon the face of Judge KERRIGAN'S opinion there may be an apparent inconsistency between the conclusion therein reached and the Hom Chung Case (C. C. A.) 41 F.(2d) 206, this day decided, because the discrepancies listed in the opinion in the latter are more numerous than and some of them seemingly as serious as those referred to by Judge KERRIGAN. But as is often true, the relative probative weight of the testimony in two cases cannot be fairly appraised by reference only to specific discrepancies. Considered in the light of all the surrounding circumstances, the testimony here is less convincing. If it be granted that the corroborating witness Wong Ben Yook testified in good faith, his testimony is without substantial probative value. While I do not think it necessary to attach to the alleged father's statement that one of the reasons why he did not produce as a witness another alleged son was that "the testimony would be all mixed up," a sinister meaning, it still remains true that neither he nor the applicant produced as witnesses other alleged members of the family or third persons having intimate and long-standing knowledge of his family, though, manifestly, such a course would have been reasonably practicable. The failure in this respect takes on added significance, I think, when it is borne in mind that the applicant had once before been denied admission; he should have been prepared to make out his right by the best available evidence.