**NAGLE, Commissioner of Immigration, v. JIN SUEY.**

**No. 6083.**

Circuit Court of Appeals, Ninth Circuit.
June 9, 1930.

Geo. J. Hatfield, U. S. Atty., and Sol A. Abrams, Asst. U. S. Atty., both of San Francisco, Cal., for appellant.

Stephen M. White, of San Francisco, Cal., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge.

Appellee sought admission as the foreign-born son of one Jin Fung For, who, it is conceded, is by birth a citizen of and resides in the United States. Holding the evidence to be insufficient to establish the alleged paternity, the administrative officers denied the application, whereupon the applicant brought this proceeding, in habeas corpus, and from an order below granting his prayer the Commissioner of Immigration appeals.

But for certain discrepancies in the testimony to which we shall later refer, unquestionably the applicant made a very strong case in the administrative proceedings, and in that respect the record differs to a marked degree from Dong Tong Sing v. Nagle (C. C. A.) 41 F.(2d) 521, this day decided. Indeed, upon so many matters of detail touching the home village and family life and history are the applicant, his alleged father, and an alleged prior landed brother in accord that escape from the conviction that appellee was reared in the village and sustained the most intimate relations to Jin Jung For's family is well-nigh impossible. No coaching unless carried on through a series of years would enable the witnesses to testify in such good agreement upon so many points.

One of the discrepancies apparently regarded by the immigration officials as most serious arose in this way: All the testimony tended to show the applicant was born January 14, 1906. Upon his return from China the alleged father, on September 27, 1905, after answering that he had no children, was asked, "Is your wife an expectant mother?" To which he replied, "No." Upon his attention having been called to this testimony during the present examination, he explained that his wife had had a miscarriage earlier in the year and when he left he "did not know whether she was pregnant again or not." Then this question and the answer thereto: "Q. It seems almost inconceivable that your wife could have been almost five months pregnant while you were in China and you not know it. A. I was in Hong Kong almost two

months before I returned to this country that year." The question seems to have arisen unexpectedly and the witness apparently gave the answer promptly, without time for reflection, and yet the immigration officials declined to credit it. Not only were the circumstances such as to render the theory of fabrication improbable but in the question itself there was an assumption contrary to fact. As already stated, the original testimony was given on September 27th, in this country, but it does not appear how long after the witness' arrival his examination took place, or what length of time was consumed in going from his home to the seaport or how long he waited there to embark or how long after embarking before he reached San Francisco.

Upon the question whether or not applicant had ever attended school in Canton, the testimony given by the three witnesses is out of accord with that given in 1921 by the alleged father and another alleged son, but it is to be borne in mind that upon that subject the father at least never testified from his own knowledge; he was in this country and could only state what he had heard or, as was seemingly the case here, what he assumed to have been done as the result of certain instructions he had given. There is also a seeming discrepancy of a minor character in respect of the schooling of another brother. But, assuming the discrepancies touching the schools to be real, they sink into insignificance when compared with the many subjects upon which there is agreement, and some discrepancies are to be expected in the testimony of the most truthful witnesses. Go Lun v. Nagle (C. C. A.) 22 F.(2d) 246; Nagle v. Dong Ming (C. C. A.) 26 F.(2d) 438.

When all the testimony is considered we think the discrepancy relative to the question of a little bridge in the village, as well as that in respect of the whereabouts of one Jin Tung On and the relation to the family of one Jin Wee Gin, is ruled by considerations adverted to by us in Nagle v. Wong Ngook Hong, 27 F.(2d) 650.

Nor is it thought there is any significance in the fact that in giving his testimony the applicant used the dialect of the locality where he had been employed for about five years just before leaving China, rather than that of his home village, the two not being radically different. The facts in Lim Tung Noy v. Nagle (C. C. A.) 30 F.(2d) 650, are not closely analogous.

Affirmed.