**PANDOLFO v. ACHESON, Secretary of State of United States.**

No. 147, Docket 22547.

United States Court of Appeals
Second Circuit.

Argued Jan. 12, 1953.

Decided Feb. 13, 1953.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and CHASE, Circuit Judges.

SWAN, Chief Judge.

Vincenzo Pandolfo was born in the United States in 1912. Two years later his parents, who were Italian nationals, went back to Italy, taking their infant son with them. There he remained until 1949 when he obtained a certificate of identity enabling him to return to the United States to prosecute the present action under section 503 of the Nationality Act of 1940, 8 U.S.C.A. § 903, for a judgment declaring him to be a national of the United States. The defense of the action was that under section 2 of the Act of March 2, 1907, the plaintiff lost his American citizenship by serving in the Italian Army and taking an oath of allegiance to the King of Italy in 1933. The trial court found that his oath was taken under duress, and gave judgment for the plaintiff. The defendant has appealed.

The relevant provisions of the statute upon which the Government relies are printed in the margin.[1] Concededly the oath of allegiance taken by the plaintiff would operate to expatriate him if taken voluntarily, but would not if taken under duress.[2] Consequently the question presented by the appeal is whether the ruling that his oath was taken under duress is supportable on the facts developed at the trial.

There is no dispute as to the facts. The only testimony was given by the plaintiff; the other evidence was documentary, for the most part consisting of the plaintiff's Italian military service record. Because of his birth in the United States, his Italian parentage, and his residence in Italy from early childhood, he possessed

Myles J. Lane, U. S. Atty., and Benjamin F. Nolan, Asst. U. S. Atty., New York City, of counsel, for appellant.

Casper & Nehrbas, New York City, Montague Casper, New York City, of counsel, for appellee.

1. Section 2 of the Act of March 2, 1907, 34 Stat. 1228, provides:
 "That any American citizen shall be deemed to have expatriated himself * * * when he has taken an oath of allegiance to any foreign state."
 This provision was preserved as § 401 (b) of the Nationality Act of 1940, 8 U. S.C.A. § 801(b).

2. Dos Reis ex rel. Camara v. Nicolls, 1 Cir., 161 F.2d 860; Podea v. Acheson, 2 Cir., 179 F.2d 306; Doreau v. Marshall, 3 Cir., 170 F.2d 721; cf. Revedin v. Acheson, 2 Cir., 194 F.2d 482, certiorari denied, 344 U.S. 820, 73 S.Ct. 17.

dual nationality and citizenship. As an Italian national he was subject to be called up for military service, and he registered for it as required by Italian law. On February 24, 1933 he became 21 years old. Shortly before November 1933 he received a card directing him to report for military service on November 3. He reported as directed but he testified "I didn't do this of my own free will. I was forced to go for military duty." He said that if he had not reported, he would have been picked up by the Italian police the next morning. He was then sent to the induction station at Siracusa, Italy. The appellant stresses the fact that plaintiff did not protest to any United States consulate that he was being forced to enter Italian military service under duress. But in view of his very limited schooling and the distance he would have had to travel to reach an American consulate such failure to protest should not be taken as conclusive proof that his induction was voluntary. Moreover, he testified that he told the officer in charge at Siracusa that he was an American citizen and "should not be obligated to serve in the Italian Army." During the period in question an oath of allegiance was required and was administered "en masse" to all recruits. Plaintiff took such oath together with his fellow recruits on December 10, 1933. He was discharged from the Italian Army on December 1, 1935. Thereafter on November 1, 1939 he was recalled to active military duty and served until 1943. The

appellant does not rely on this second service as a ground of expatriation.[3] On August 18, 1944 plaintiff made a formal application for an American passport and registered under the United States Selective Service Act at Palermo, Italy.

It was also brought out at the trial that plaintiff could have returned to the United States before he was inducted into the Italian Army. On May 5, 1930 he applied to the United States Consulate at Messina, Italy, for a determination of his claim to American citizenship. On November 21, 1930 the issuance to him of a United States passport was authorized. At the same time a passport was authorized for his sister. She came to the United States in September 1931 but he did nothing to obtain the passport authorized for him. The trial court's opinion states that he gave no "credible explanation for his failure to leave Italy and return to the United States, before he was required to serve in the Italian Army under his dual citizenship."

 We agree with the Government's contention as to burden of proof in a suit of this character. The plaintiff has the burden of proving that he is a United States citizen.[4] He made a prima facie case by alleging and proving his birth in New York. The Government then had the burden of showing that he had expatriated himself. This it did by proof of his oath of allegiance to the King of Italy. Presumptively this oath was voluntarily tak-

3. As to this service the appellant's brief says:

"Under provisions of Section 401(c) of the Nationality Act of 1940, the military service, itself, was sufficient basis to support additional grounds for expatriation. Under this Section the taking of the oath of allegiance to the foreign state is not a prerequisite. However, the Government has not urged this additional ground of expatriation against plaintiff consistent with the views expressed by the Attorney General of the United States in Matter of A————, No. 56158/416, 2 I. & N. Dec. 304, 1945, to the effect that where such service could not be terminated on or before January 13, 1941, the effective date of the Nationality Act of 1940, the service per-

formed after the effective date should be regarded as involuntary on the theory that it was unlikely that such a soldier who entered service in 1939 could have had any voice in terminating his military service on or before January 13, 1941. This second period of military service will, however, be offered by the Government, herein, under Point V, as evidence tending to show that plaintiff ratified his expatriating act of 1933 by making himself available for and entering this second period of Italian military service without protest."

4. Bauer v. Clark, 7 Cir., 161 F.2d 397, 400, certiorari denied 332 U.S. 839, 68 S.Ct. 210, 92 L.Ed. 411, rehearing denied 332 U.S. 849, 68 S.Ct. 342, 92 L.Ed. 419.

en.[5] He then had the burden of going forward with evidence to establish that it was taken under duress. The trial court found that this was the fact. The appellant contends that the court should not have accepted the plaintiff's uncorroborated testimony, and particularly since other portions of his testimony were found incredible. But it is elementary that the trier of facts need not discredit all the testimony of a witness because part of it is not believed. There is no legal requirement that testimony of duress be corroborated by documentary or other proof. The trial judge saw the witness and believed his testimony that induction into military service and the oath thereafter taken was done under duress. We cannot say that the finding of duress was "clearly erroneous," as we must to reverse the finding.[6]

 The appellant also argues that plaintiff's failure to remove himself from the jurisdiction of the Italian authorities before he was called for military service in 1933 was the proximate cause of his induction and therefore the oath was taken voluntarily. But the recent decision of the Supreme Court in Mandoli v. Acheson, 344 U.S. 133, 73 S.Ct. 135, establishes that continued residence abroad after a minor citizen comes of age does not forfeit citizenship. Since the 1907 Act does not impose any duty to make an election to return to the United States when the minor comes of age, we cannot accept the argument that whatever he does thereafter in the foreign country is done voluntarily.

Nor do we find any merit in the contention that his failure to take conclusive steps to leave Italy during the four years he enjoyed civilian status in Italy between the two periods of his military service operated as a ratification by subsequent conduct of his "expatriating act." If the 1933 oath was taken voluntarily, it needs no ratification as an expatriating act. If it was done

under duress, subsequent conduct cannot make it voluntary.

In our view the appeal presents a very narrow issue. The trial court found that the plaintiff acted under duress as he testified and as may reasonably be believed under the circumstances, since Italy regarded him as an Italian citizen, subject to military service. We cannot hold that the finding was clearly erroneous. Cf. Attorney General of United States v. Ricketts, 9 Cir., 165 F.2d 193, 195.

Judgment affirmed.

---

**5.** See In re Gogal, D.C.Pa., 75 F.Supp. 268.

**6.** Had the trial court found the oath to have been the plaintiff's voluntary act, we would not have reversed such finding

as clearly erroneous. See Kondo v. Acheson, D.C.Cal., 98 F.Supp. 884, 888; Hamamoto v. Acheson, D.C.Cal., 98 F. Supp. 904, 906; Zimmer v. Acheson, D. C.Kan., 91 F.Supp. 313, affirmed 10 Cir., 191 F.2d 209.