[Civ. No. 11225.   First Appellate District, Division One.—December 13, 1939.]

In the Matter of the Estate of FRED WOODSON, Deceased. J. MAURICE, as Administrator, etc., Appellant, v. SHIRLEY WOODSON et al., Respondents.

Jay Maurice, Vaughns & Larche and Frank M. Larche for Appellant.

Edward D. Mabson and John W. Bussey for Respondents.

WARD, J.—This is an appeal by the administrator of the estate of Eliza Wooldridge, deceased, the mother of Fred Woodson, deceased, from an order, judgment and decree, declaring that Eliza Wooldridge is not an heir at law of Fred Woodson and that Betty Jean Woodson is an heir at law and entitled to an undivided one-half of the estate of Fred Woodson, deceased.

The evidence shows that the mother of Betty Jean had been married to a man named Terry and from this marriage there had been born one child. Shirley Terry arrived in San Francisco in January of 1932 and lived for about one year in a Pine Street apartment owned by Woodson. In February of 1933, she moved to an apartment on Sutter Street, and on June 22d following, Betty Jean was born at the San Francisco Hospital, the mother registering under the name of Williams, and the birth certificate of Betty Jean stating that the residence of the father and mother was at the Sutter Street address; that George Melvin Williams was the father of the child and that the maiden name of the mother was Shirley Terry. Some six or seven months after the birth of the child the mother moved back to the home of Woodson on Pine Street, and in December of 1935 Woodson and Shirley Terry were married. Fred Woodson died intestate on the 29th day of November, 1936, predeceasing his mother Eliza Wooldridge. Thereafter Shirley Woodson, his wife, was appointed the administratrix of his estate.

The court found that Betty Jean Woodson was conceived during the month of September, 1932, at a time when Shirley Woodson, then known as Shirley Terry, was residing in and upon premises owned and occupied by decedent Fred Woodson. The court also found that prior and subsequent to the marriage, Fred Woodson publicly acknowledged Betty Jean as his child and that he received her into his family and treated her in every way as a legitimate child.

It is the contention of appellant that Betty Jean is the issue of Williams, who died in May, 1936, and Shirley Terry, now Shirley Woodson; that the evidence did not reasonably and substantially support certain findings to the contrary; that a marriage between Williams and Shirley Terry was proved by the admissions and conduct of these parties, and that as a result of such conduct an estoppel arose which operated against either of the last-named parties denying that they were husband and wife or that they were the parents of Betty Jean. In support of appellant's contention that Shirley Terry and George Melvin Williams were husband and wife, and that Betty Jean was the issue of such marriage, a certified copy of the birth certificate was introduced and marked as an exhibit in the case. The exhibit in fact does not state that Shirley and Williams were husband and wife, but it does state the name of Williams as the father of the child. Shirley Woodson had the right to deny the accuracy of the statements contained in the birth certificate, and if such contrary evidence was believed it was sufficient to overcome the *prima facie* effect of the documentary evidence. In *Arais* v. *Kalensnikoff*, 10 Cal. (2d) 428, 434 [74 Pac. (2d) 1043, 115 A. L. R. 163], the court said: "In the birth certificate, the mother caused John Morales to be named as the father of the child; but this does not raise an estoppel against her and require a reversal of the judgment, as the defendant contends. There is no evidence that she led the defendant to believe that this statement was true. On the contrary, the record supports the implied finding of the trial judge that she gave a fictitious name for the father at the request of the defendant and for the purpose of protecting him." In the instant case the credibility of the mother was exclusively with the trial court. (*Estate of Gird,* 157 Cal. 534 [108 Pac. 499, 137 Am. St. Rep. 131].)

Section 3083, Political Code, as in force at the time, provided that a copy of the record of a marriage or birth when certified by the state registrar to be a true copy thereof, shall be *prima facie* evidence in all courts and places of the facts therein stated. *Prima facie* evidence is not conclusive evidence; it simply denotes that the evidence may suffice as proof of a fact until or unless contradicted and overcome by other evidence. (Code Civ. Proc., sec. 1833.) Entries in official record books, made in the performance of official duty, are *prima facie* evidence of the facts stated therein (secs. 1920, 1926, Code Civ. Proc.), but such entries do not in and of themselves always express or guarantee the truthfulness of the contents of the document.

There is no evidence of a marriage between Williams and the mother of Betty Jean by license and solemnization or otherwise unless an inference may be drawn from the conduct of the parties that such a relation existed.

The witness Shirley Woodson admitted that she had given the name of Williams to the hospital authorities as the father of the child. She testified in substance that she did not use the name of Woodson on occasions because he "was threatened to be sued and I did that to protect Mr. Woodson." He "asked me not to use his name at that time".

Other evidence *pro* and *con* upon the issues in this case was admitted, which was exhaustively considered in the briefs, but all of such evidence related to questions of fact regarding the credibility of witnesses or the weight to be given certain documentary evidence, matters to be determined exclusively by the trier of the facts. It is not necessary to discuss further facts and arguments submitted by respondents to uphold their contention as to the correctness of the decree that Betty Jean Woodson is the owner of an undivided one-half interest in the estate of Fred Woodson.

The order, judgment and decree appealed from is affirmed.

Peters, P. J., and Goodell, J., *pro tem.*, concurred.